IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NEILA DIANE GATEWOOD,

                Plaintiff,

vs.                                 Case No. 13-1339-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On May 11, 2012, administrative law judge (ALJ) John B. Langland issued his decision (R. at 20-29).  Plaintiff alleges that she had been disabled since June 12, 2009 (R. at 20). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2014 (R. at

4

22).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 22).  At step two, the ALJ found that plaintiff had the
following severe impairments:  history of carpal tunnel syndrome
(status post bilateral release surgery), sleep apnea,
hypertension, chronic heart failure, history of angina,
fibromyalgia, an affective disorder, and recent anxiety
diagnosis (R. at 22).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 22).  After determining plaintiff's RFC (R. at 24), the
ALJ determined at step four that plaintiff is unable to perform
past relevant work (R. at 28).  At step five, the ALJ found that
plaintiff can perform jobs that exist in significant numbers in
the national economy (R. at 28-29).  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 29).

**III.  Should this case be remanded in order for the Commissioner
to consider new evidence?**

     42 U.S.C. § 405(g), as it pertains to remands, states in
sentence six that "[t]he court…may at any time order additional
evidence to be taken before the Commissioner of Social Security,
but only upon a showing that there is new evidence which is
material and that there is good cause for the failure to
incorporate such evidence into the record in a prior
proceeding…".  The requirements for a sentence six remand are

set forth in <u>Heimerman v. Chater</u>, 939 Fed. Supp. 832, 833-834

(D. Kan. 1996):

> For a remand to be appropriate when good
> cause is shown, it must be determined "that
> the new evidence would have changed the
> Secretary's decision had it been before
> him." <u>Hargis v. Sullivan</u>, 945 F.2d 1482,
> 1493 (10th Cir.1991). Implicit in the
> materiality requirement is that "the
> proffered evidence relate to the time period
> for which the benefits were denied." <u>Hargis
> v. Sullivan</u>, 945 F.2d 1482, 1493 (10th
> Cir.1991). <u>See also Szubak v. Secretary of
> Health and Human Services</u>, 745 F.2d 831, 833
> (3rd Cir.1984) (new evidence may not relate
> to a "later-acquired disability" or "the
> subsequent deterioration of the previously
> non-disabling condition"). The requirements
> for introduction of additional evidence may
> be summarized as follows: (1) the proffered
> evidence must be "'new'" and not merely
> cumulative of what is already in the record;
> (2) the proffered evidence must be material,
> that is, relating to the time period for
> which benefits were denied, and offering a
> reasonable possibility of changing the
> Secretary's decision; and (3) the claimant
> must show good cause for the failure to
> obtain and present the evidence at the prior
> hearing. <u>Tirado v. Bowen</u>, 842 F.2d 595, 597
> (2nd Cir.1988).

On February 8, 2011, plaintiff's treating physician, Dr.

Davis, prepared a physical capacities evaluation on the

plaintiff.  He opined that plaintiff could frequently lift 5

pounds, could occasionally lift up to 10 pounds, and could never

climb, balance, crouch or crawl.  He stated that plaintiff

suffers from fatigue and pain for which there is a reasonable

medical basis, and indicated that the fatigue and pain are

disabling to the extent that it prevents the plaintiff from
working full-time, even in a sedentary position (R. at 486-489).

    The ALJ discounted the opinions of Dr. Davis, explaining as
follows:

> However, the treatment notes at the end of
> 2010 and the beginning of 2011 appear to
> show that the claimant was having an episode
> of plantar fasciitis and that she was
> receiving injections for that diagnosis
> along with a recommendation for physical
> therapy.  Additionally, the treatment notes
> from Dr. Davis on February 16, 2009 show
> that he informed the claimant she should
> seek help from the personnel department at
> her job to get temporary disability for
> recovery time due to her medical condition
> including imminent bariatric surgery
> (Exhibit 3F, p. 14 [R. at 312]).  Thus, the
> medical record supports a finding that Dr.
> Davis' opinions regarding the claimant's
> limitations is only for a limited period of
> time and not permanent total disability.  It
> is specifically noted that an
> echocardiography on November 17, 2011 was
> basically normal (Exhibit 20F) and the
> claimant's cardiac testing supports a
> finding that the claimant could actually
> perform up to medium exertional level work.

(R. at 27).  The ALJ had also previously noted that the most
recent treatment notes of Dr. Davis indicated that the plaintiff
reported feeling quite good except for some chest pain (R. at
25).

    After the ALJ decision of May 11, 2012, plaintiff filed a
request for review of the ALJ decision on June 22, 2012 (R. at
14-16).  On June 6, 2013, the Appeals Council wrote to

plaintiff's counsel, providing him with the records he was
requesting, and informing him that he could submit additional
evidence or information within 25 days of the date of this
letter.  It indicates that they would not allow counsel more
time to submit evidence except for very good reasons (R. at 6).
On July 1, 2013, plaintiff's counsel wrote the Appeals Council.
Counsel provided some additional records and stated that he is
currently in the process of obtaining treating source statements
from two separate sources, and requested until July 31, 2013 for
submission of those statements (Doc. 17-2).  On July 12, 2013,
the Appeals Council issued its decision, denying plaintiff's
request for review (R. at 1-5).  There was no mention of the
request of plaintiff's counsel for additional time to submit the
two treating source statements.  On July 31, 2013, plaintiff's
counsel filed a motion to reopen, along with the treating source
statements by Dr. Schell, dated July 19, 2013, and Dr. Davis,
dated July 26, 2013 (Doc. 17-3).  The record does not reflect
the filing of this motion or any decision on this motion by the
Appeals Council.

Plaintiff's counsel indicated that because he was new to
the case, it was necessary to request a copy of the record and
additional time to develop and submit additional evidence.  The
Appeals Council provided the record on June 6, 2013 (Doc. 17 at
18).  Plaintiff's counsel further stated that the two treating

8

source statements could not be obtained within the 25 day time
limit set by the Appeals Council because of the schedules of the
two doctors, and the need to obtain consultations and then for
the doctors to review their statements (Doc. 17 at 20).  As
noted above, plaintiff's counsel requested additional time to
submit those statements on July 1, 2013, but there is no
indication the Appeals Council ruled or responded to that
request.  Plaintiff's counsel stated that the Appeals Council
failed to act on the request to reopen (Doc. 17 at 20).

　　　The court will first review the statement from Dr. Davis,
dated July 26, 2013.  It states, in relevant part:

> …I am responding to some questions about the
> Social Security Judge's interpretation of
> the "Physical Capacities Evaluation" that I
> ordered on February 8, 2011.  <u>The judge
> thought that I was including limitations
> from her plantar fasciitis, which was a
> temporary condition.  I was not including
> consideration of her plantar fasciitis.  I
> was including primarily consideration of her
> fibromyalgia, which causes, and still does,
> disabling pain and fatigue as I indicated in
> the "Physical Capacities Evaluation".</u>  It is
> my opinion that her cardiac condition and
> hypertension, though controlled, could at
> times also contribute somewhat to her
> fatigue.  She also suffers from stress,
> which plays a definite role in exacerbating
> her pain and fatigue and causes chest pain
> and elevates her blood pressure at times.
> She also has sleep apnea, which contributes
> to difficulty sleeping and thus to her
> fatigue.
>
> 　　　<u>The judge also thought that the
> "Physical Capacities Evaluation" conflicted</u>

with my February 16, 2009 opinion that she
needed temporary disability to recover from
upcoming bariatric surgery.  The temporary
disability that I stated she needed was "for
one year to allow a sufficient recovery to
return to gainful employment."  Her medical
course unfortunately did not permit the
hoped for return to work even after more
than a year as I documented in the February
15, 2011 "Physical Capacities Evaluation."
Her fibromyalgia did not improve.

        My June 22, 2009 treatment note
reflects that I had been recommending
disability for some time before Ms. Gatewood
actually stopped working [R. at 307]…Some
days are relatively good, but others are not
so good, and on some days, because of
fibromyalgia exacerbations, she must rest,
lie down, and take naps frequently
throughout the day.  These would be days she
could not work at all.  Days like this occur
at least three days a month and can be
considerably more frequent especially if she
overdoes her activities.  On other days she
would be limited to less than eight hours
work because of the pain and need to rest.
If she tried to keep a work schedule in
which she could not rest, including lie down
as needed, that would increase the frequency
and duration of her fibromyalgia
exacerbations.

        The judge relied on my "most recent
treatment notes" when Ms. Gatewood reported
feeling quite good except for some chest
pain.  That, however, is the nature of the
fibromyalgia; she has some relatively good
patches of time followed by more difficult
times and by periods of acute exacerbations.
Feeling "quite good" at times is entirely
consistent with her fibromyalgia and my
assessment of her limitations…

(Doc. 17-3 at 14-15, emphasis added).

In reviewing the requirements for introduction of additional evidence, the proffered statement of Dr. Davis is clearly new, and not merely cumulative of what is already in the record.  It elaborates on his opinions, and, most importantly, it responds to various statements of the ALJ in his decision.

The second requirement is materiality; the statement must relate to the time period for which benefits were denied, and offer a reasonable possibility of changing the Commissioner's decision.  The statement clearly relates to the time period for which benefits were denied because it addresses and clarifies the opinions expressed by Dr. Davis on February 8, 2011.  The court must next consider whether it offers a reasonable possibility of changing the Commissioner's decision.

In the case of Wilson v. Colvin, Case No. 12-1365-JWL, 2014 WL 1689293 (D. Kan. April 29, 2014), Ms. Martin, a psychiatric nurse-practitioner, had provided a medical source statement, but the ALJ accorded it little weight.  Instead, the ALJ gave great weight to the opinions of state agency consultants.  2014 WL 1689293 at *4.  Ms. Martin then submitted an opinion letter explaining and clarifying her earlier statement; this letter was first submitted to the Appeals Council.  2014 WL 1689293 at *5-6.  The court held that Ms. Martin's explanation, if accepted, provides material information which would significantly alter the ALJ's decision, for it tends to negate much of the ALJ's

basis for discounting the opinions of Ms. Martin and Dr. Schwartz.  The court noted that if those opinions are not properly discounted, disability is the only remaining option. The court indicated that it could not weigh this evidence in the first instance, and remanded the case in order for the Commissioner to consider the letters provided to the Appeals Council and to determine what weight should be accorded to the medical opinions in light of all the record evidence.  2014 WL 1689293 at *6.

As was the case in Wilson, the July 26, 2013 statement from Dr. Davis provides material information which, if accepted, would significantly alter the ALJ's decision, for it tends to negate much of the ALJ's basis for discounting the earlier opinions expressed by Dr. Davis.  If the opinions of Dr. Davis are not properly discounted, they indicate that plaintiff cannot work due to fatigue and pain.  The court therefore finds that the July 26, 2013 statement from Dr. Davis is clearly material.

The third requirement for a sentence six remand to consider new evidence is that plaintiff must show good cause for the failure to obtain and present the evidence at the prior hearing. Plaintiff must be able to show why she could not have obtained and submitted the July 26, 2013 statement from Dr. Davis to the ALJ and the Appeals Council.  Wilson v. Astrue, 602 F.3d 1136, 1149-1150 (10th Cir. 2010).  Certainly, plaintiff could not have

presented the statement from Dr. Davis to the ALJ prior to his decision because the letter addresses the reasons given by the ALJ for discounting the opinions of Dr. Davis.  Plaintiff's counsel, who was new to the case, made a good faith effort to provide the material to the Appeals Council before its decision. However, the record does not indicate that the Appeals Council responded to counsel's July 1, 2013 request for additional time to provide the treating source statements.  This request was made prior to the ruling by the Appeals Council on July 12, 2013.  The record is also silent on plaintiff's July 31, 2013 request to reopen in order to submit the statements by Dr. Davis and Dr. Schell.  On the facts of this case, the court finds that plaintiff demonstrated good cause for the failure to present this evidence prior to the ALJ and the Appeals Council decisions.  Because the statement from Dr. Davis is new and material, and because good cause was shown for the failure to obtain and present this material prior to the decisions by the ALJ and the Appeals Council, this case shall be remanded pursuant to sentence six in order for the Commissioner to consider the statement of Dr. Davis, and to determine the appropriate weight to be accorded to each of the medical opinions in the record in light of all of the record evidence.

Plaintiff also seeks remand of this case to consider a statement and mental RFC assessment from Dr. Schell, dated July

19, 2013 (Doc. 17-3 at 7-12).  The treatment and opinions of Dr. Schell occurred after the ALJ decision; thus, there are legitimate questions regarding whether such evidence was material and whether plaintiff should have obtained and presented such evidence prior to the ALJ decision.  However, because this case is being remanded in order to consider the statement from Dr. Davis, on remand, the ALJ shall evaluate the treatment and opinions of Dr. Schell, and determine what weight, if any, to accord to his opinions.

Plaintiff's brief raised other issues in addition to the motion to remand.  However, the court will not address these issues at this time because they may be affected by the ALJ's resolution of the case on remand after the ALJ considers the new evidence.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, on remand, the court would note that the ALJ, in his decision, stated that the opinions of Dr. Fluter indicated that plaintiff was temporarily limited to lifting no more than 10 pounds (R. at 27).  However, Dr. Fluter stated in regards to all his restrictions that plaintiff had a number of restrictions "at least on a temporary basis" (R. at 565).  Furthermore, Dr. Fluter's report mentioned numerous other limitations which were not discussed or addressed by the ALJ in his decision.  On remand, the ALJ shall consider those opinions, and if they are

not included in the ALJ's RFC findings, the ALJ shall, as required by SSR 96-8p, explain why those opinions were not adopted.  1996 WL 374184 at *7.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

IT IS FURTHER ORDERED that the parties will comply with the requirements of D. Kan. Rule 83.7.2.

Dated this 30th day of September 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge